IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

J.M., by and through G.M. and W.S.,
et al.,

                Plaintiffs,

v.

OZARK HORIZON STATE SCHOOL,
et al.,

                Defendants.

Case No. 23-3222-CV-S-MDH

## ORDER

Before this Court is Defendants' Motion to Dismiss. (Doc. 40). Defendants move to dismiss Plaintiffs' First Amended Petition for Damages arguing Plaintiffs have failed to state a claim under the Americans with Disabilities Act and Rehabilitation Act; are barred from recovering emotional distress, mental anguish and punitive damages; and fail to state a claim for fraud. Defendant Youngblood also contends she is entitled to official immunity. The motion is fully briefed. For the reasons set forth herein, the motion is granted in part and denied in part.

## BACKGROUND

Plaintiff J.M. is a severely developmentally disabled, and non-verbal minor male child who, on March October 19, 2022, was 9 years-old and residing with his father, G.M., and mother, W.S. in Ozark County, Missouri.[1] J.M. was a student at defendant Ozark Horizon State School, a day school for the severely disabled. Defendant Christy Renee Rinear ("Rinear") was an employee

---

[1] The background is taken from the allegations contained in Plaintiffs' First Amended Petition.

1

at the school. Defendant Sheryl Youngblood was the building administrator and area director for the school. Plaintiffs' petition contains citations to the school's handbook, its mission and beliefs, and other policies and procedures as it relates to Plaintiffs' claims. Plaintiffs state they relied on the written policies in leaving J.M. in the supervision, care, custody, and protection of Defendants.

Plaintiffs allege on at least two occasions in October 2022 Rinear physically assaulted J.M. at the school. On or about October 20, 2022, J.M. was taken to the Children's Division Child Advocacy Center for examination regarding the allegations. During the examination, bruising in the shape and form of a handprint was documented on the minor child's arms that arguably corroborate and confirm the allegations of physical assault by Rinear.

In addition to the allegations against Rinear, Plaintiffs allege defendant Youngblood observed and/or had personal knowledge of the abuse and failed to report it to any law enforcement or child protective agency. Plaintiffs allege other staff observed and/or had knowledge of the abuse but were instructed not to report the incidents to the State's hotline, and instead were directed to only report any incidents to Youngblood. Plaintiffs claim similar assaults have occurred on at least one other minor at the school and Defendants had knowledge of the events and took no action.

Plaintiffs claim despite knowledge of the assault of a minor child, Rinear was allowed to keep teaching. Plaintiffs' First Amended Petition contains 68 paragraphs of factual allegations. The Court has summarized some of the allegations for purposes of the Court's ruling and not all the allegations are recited here.

Plaintiffs bring the following claims: Count 1 – Negligence (against Individual Defendants Rinear and Youngblood); Count II - Negligent Supervision (against Individual Defendant Youngblood); Count III - Violation Of Title II Of The Americans With Disabilities Act/The Americans With Disabilities Act As Amended (against Ozark Horizon State School; MSBE,

2

MDESE; MSSD); Count IV - Violation Of The Rehabilitation Act of 1973 (against Ozark Horizon State School; MSBE; MDESE and MSSD); Count V - Civil Assault and Battery (against Individual Defendant Rinear); Count VI - Intentional Infliction Of Emotional Distress (against Individual Defendant Rinear); Count VII – Fraud (against Individual Defendants Rinear and Youngblood); and Count VIII Negligent Infliction Of Emotional Distress/Tort Of Outrage (against Individual Defendants Rinear and Youngblood).

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Yang v. Hometown Bank, N.A.*, No. 6:22-cv-03253-MDH, 2023 WL 3486977, at *2 (W.D. Mo. May 16, 2023). A claim lacks facial plausibility, and must be dismissed, when it does not "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678.

## DISCUSSION

1. **Americans with Disabilities Act and Rehabilitation Act**

In Counts III and IV, Plaintiffs allege that the State Defendants violated the Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA"). Defendants state: "The ADA and the RA are similar in substance and, with the exception of the RA's federal funding requirement, cases interpreting either are applicable and interchangeable." Citing *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999) (internal quotations omitted).

"To state a prima facie claim under the ADA, a plaintiff must show: (1) he is a person with a disability as defined by statute; (2) he is otherwise qualified for the benefit in question; and (3)

3

he was excluded from the benefit due to discrimination based upon disability." *Id*. Defendants cited in their brief that the Eighth Circuit has "consistently held that where alleged ADA and § 504 violations are based on educational services for disabled children, the plaintiff must prove that school officials acted in bad faith or with gross misjudgment." *I.Z.M. v. Rosemount-Apple Valley-Eagan Pub. Sch.*, 863 F.3d 966, 973 (8th Cir. 2017). However, this heightened standard was vacated in *A. J. T. by & through A. T. v. Osseo Area Sch., Indep. Sch. Dist*. No. 279, No. 24-249, 2025 WL 1657415 (U.S. June 12, 2025). The Supreme Court stated "[w]e hold today that ADA and Rehabilitation Act claims based on educational services should be subject to the same standards that apply in other disability discrimination contexts. Nothing in the text of Title II of the ADA or Section 504 of the Rehabilitation Act suggests that such claims should be subject to a distinct, more demanding analysis." *Id.* at 6. As a result, the bad faith or gross misjudgment rule of the Eighth Circuit no longer applies.

Defendants' briefing argues that Plaintiffs' claims fail because they do not allege specific facts showing "gross misjudgment or bad faith" on the part of the State Defendants. This argument is no longer applicable.

The Court has reviewed the allegations contained in Plaintiffs' petition and finds Plaintiffs have plead enough to survive a motion to dismiss based on the standard. Whether Plaintiffs may ultimately prevail on any such claim is not the issue before the Court. Rather, Plaintiffs have alleged the actions of Defendants were taken with deliberate indifference toward J.M. and Plaintiffs' petition includes multiple alleged failures including but not limited to: failure to follow procedures; failure to report, investigate and address the assault(s); failure to establish and implement effective policies, procedures and training to properly prevent, investigate and address assaults and harassment of students; and failure to appropriately and immediately protect the

4

education of J.M. and offer him immediate alternative educational services that he had been denied. The allegations of physical assaults and the alleged awareness and failure to report and protect J.M. is sufficient to state a claim against the Defendants.

After a review of Plaintiffs' complaint, the Court finds Plaintiffs have plead sufficient facts to state a claim that survives a motion to dismiss. Again, whether Plaintiffs may ultimately prevail on any such claim is not the issue presently before the Court. The Motion to Dismiss Counts III and IV is denied.

### 2. Negligence

Defendants move to dismiss Plaintiffs' negligence claim arguing they did not owe Plaintiff a duty and the economic loss doctrine bars the claim. To state a negligence claim, Plaintiffs must plead that Defendants owed a duty to them. *See Peters v. Wady Indus., Inc*., 489 S.W.3d 784, 793 (Mo. 2016). Whether a defendant owed a plaintiff a duty "is purely a question of law." *Id*. at 793-94. Further, "[a] legal duty may arise under law, contract, or from the legislature." *Blevins v. Am. Fam. Mut. Ins. Co*., 423 S.W.3d 837, 841 (Mo. Ct. App. 2014).

Here, Plaintiffs allege that defendant Youngblood had a duty to abide by the policies and procedures set by the State and to see that those she supervised did as well. Plaintiffs allege Youngblood is a State Mandated Reporter and as the building administrator and area director owed a duty to J.M. Plaintiffs further allege Defendant's failure to follow the policies and procedures and to report the assaults caused harm. Here, the Court finds Plaintiffs have alleged sufficient allegations to state a claim for negligence and the Motion to Dismiss this claim is denied.

5

### 3. Immunity

Defendants move to dismiss Counts I, II, VII and VIII against Youngblood based on official immunity. Plaintiffs make clear that their claims against Youngblood are brought in her individual capacity.

"Official immunity protects public officials sued in their individual capacities from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." *State ex rel. Barron v. Beger*, 655 S.W.3d 356, 360 (Mo. banc 2022) (per curiam) (quoting *State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 190 (Mo. banc 2019)) (internal quotation and alteration omitted). The doctrine is intended to allow public employees to make public safety and welfare judgments without fear of personal liability, as the public's interest will suffer if employees are afraid of financial loss at every exercise of their official functions. *Id*. (internal citation omitted).

A narrow exception to official immunity exists such that when a public officer fails to perform a ministerial duty required by law she may be personally liable for the ensuing damages. Generally, a ministerial act is defined as "clerical." *Id*. "A ministerial or clerical duty is one in which a certain act is to be performed upon a given state of facts in a prescribed manner in obedience to the mandate of legal authority, and without regard to [the public official's] judgment or opinion concerning the propriety or impropriety of the act to be performed." *Id*.

The determination of whether an act is discretionary or ministerial is made on a case-by-case basis, considering: (I) the nature of the public employee's duties; (2) the extent to which the act involves policymaking or exercise of professional judgment; and (3) the consequences of not applying official immunity. *Southers v. City of Farmington*, 263 S. W.3d 603, 610 (Mo. banc 2008); and *Davis v. Buchanan Cnty., Missouri*, 11 F.4th 604, 630 (8th Cir. 2021).

Defendant Youngblood is a public employee and Plaintiffs contend her actions occurred during the scope of her duties. Plaintiffs allege that Youngblood did not report the alleged abuse to any appropriate law enforcement or child protective agency or undertake further appropriate actions. Plaintiffs further allege that compliance with the State's regulations and the Ozark Horizon State School's Policy was not a discretionary function and did not require Youngblood to exercise judgment. Plaintiffs argue that the actions of Youngblood were ministerial in nature and therefore she is not entitled to official immunity.

Specifically, Plaintiffs state the nature of Youngblood's duties were to follow the State and School guidelines and policies and report the assault to her superiors and to law enforcement as a State Mandated Reporter. Plaintiffs allege that Youngblood's duty of reporting the assaults did not require or allow any policy making or professional judgment. Finally, Plaintiffs contend the consequences of Youngblood failing to timely report the assaults caused J.M. to continue to endure additional assaults that could have been stopped had she carried out her ministerial duties.

Here, Plaintiffs have pled that Youngblood's duty of reporting the assaults on the minor child was a ministerial duty and the Court finds Youngblood is not entitled to official immunity. The Motion to Dismiss based on official immunity is denied.

4. **Fraud**

Under the rules governing allegations of fraud, the circumstances constituting fraud must be stated with particularity. Fed. R. Civ. P. 9(b). "Thus, the fraud must clearly appear from the allegations of fact independent of conclusions. And, all the elements of fraud must be pleaded. Failure to plead any one of the essential elements properly is fatally defective." *Miller v. Ford Motor Co.*, 732 S.W.2d 564, 565 (Mo. Ct. App. 1987) (internal citations omitted).

7

Case 6:23-cv-03222-MDH    Document 58    Filed 06/17/25    Page 7 of 9

Plaintiffs' Petition makes references to representations made by Ozark and MSSD in their policies and promises. Defendants argue that Youngblood, in her individual capacity, is not interchangeable with Ozark for the purposes of attributing who made the representations. Defendants argue that no specific representations and/or promises are attributed to Youngblood and as a result the Petition lacks allegations indicating what specific promises or representations Youngblood made. Further, there are no allegations of when Youngblood made any representations or to who the specific representations were made. Defendants argue the claim for fraud against Youngblood should be dismissed as it is not sufficiently plead. Plaintiffs do not address this argument in the briefing.

In reviewing Plaintiffs' allegations, the Court agrees that Plaintiffs have failed to plead any specific representations that would constitute a claim of fraud. Plaintiffs' general references to Ozark Horizon's handbook, the written IEP, and published policies of MSSD are insufficient to state a claim for fraud against Youngblood. No statements or representations are attributed to Youngblood and Plaintiffs' reliance on "written policies and promises" does not state any statements or representations made by Youngblood that could form the basis of a claim for fraud. Rather, Plaintiffs simply allege "representations" were made, were false, and were relied upon but do not state with any particularity what the "representations" were or whether Youngblood specifically made any such "representations."

The Court finds Plaintiffs have failed to state a claim for fraud and Count VII is dismissed.

**DECISION**

For the reasons set forth herein, Defendant's Motion to Dismiss is **GRANTED in part and DENIED in part**. (Doc. 40). The Court **GRANTS** the motion to dismiss Count VII – Fraud. The Court **DENIES** the motion to dismiss all remaining claims.

**IT IS SO ORDERED.**

Dated: June 17, 2025　　　　　　　　　　*/s/ Douglas Harpool*
　　　　　　　　　　　　　　　　　　　　**DOUGLAS HARPOOL**
　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**